UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 25-278-KK-DTBx | Date: | July 25, 2025 |
| Title | *Magas Corp. et al. v. Magas Originals LLC et al.* | | |

Present: The Honorable  KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Deborah Lewman for Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING Plaintiffs' Motion for Default Judgment [Dkt. 24]

## I.
## INTRODUCTION

On January 31, 2025, plaintiffs Magas Corp., May Ann Cabrera, Nicollete Villagomez, and the Estate of Francisco Deleon Guerrero Cabrera (collectively, "Plaintiffs") filed the operative Complaint against defendants Magas Originals LLC and Keith Duenas ("Duenas") (collectively, "Defendants"), asserting claims arising from Defendants' alleged sale of apparel infringing on Plaintiffs' trademark. ECF Docket No. ("Dkt.") 1, Complaint ("Compl."). Defendants have not made an appearance in this matter. Hence, on June 17, 2025, following the entries of default by the Clerk of the Court, dkts. 17, 22, Plaintiffs filed the instant Motion for Default Judgment ("Motion"). Dkt. 24, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

## II.
## BACKGROUND

**A.     PROCEDURAL HISTORY**

On January 31, 2025, Plaintiffs filed a Complaint against Defendants asserting the following claims:

    (1)    **Cause of Action One:** Trademark Infringement under 15 U.S.C. § 1114;
    (2)    **Cause of Action Two:** Unfair Competition under 15 U.S.C. § 1125(a)(1)(A);
    (3)    **Cause of Action Three:** False Designation of Origin under 15 U.S.C. § 1125(a)(1)(B);
    (4)    **Cause of Action Four:** Unfair Competition in violation of California Business and Professions Code Section 17200 et seq. ("UCL"); and
    (5)    **Cause of Action Five:** Common Law Trademark Infringement.

Compl.

    The claims arise from Defendants' alleged sale of apparel, which infringes upon Plaintiffs' trademark. Id.

    On February 12, 2025, defendant Magas Originals LLC was served with the summons and Complaint. Dkt. 13. On April 25, 2025, defendant Duenas acknowledged receipt of summons and Complaint. Dkt. 18.

    Defendants failed to answer or otherwise appear. Hence, on March 25, 2025, Plaintiffs filed a request for entry of default against defendant Magas Originals LLC. Dkt. 16. On March 26, 2025, the Clerk of Court entered default against defendant Magas Originals LLC pursuant to Federal Rule of Civil Procedure 55(a). Dkt. 17. On June 2, 2025, Plaintiffs filed a request for entry of default against defendant Duenas. Dkt. 20. On June 3, 2025, the Clerk of Court entered default against defendant Duenas pursuant to Federal Rule of Civil Procedure 55(a). Dkt. 22.

    On June 17, 2025, Plaintiffs filed the instant Motion pursuant to Federal Rule of Civil Procedure 55(b). Mot. In support of the Motion, Plaintiffs include the declaration of their counsel, Andrew Robert Cowan. Dkt. 24-2, Andrew Robert Cowan Declaration ("Cowan Decl.").

    As of the date of this Order, Defendants have not filed an Opposition to the Motion, or otherwise appeared.

    This matter, thus, stands submitted.

**B.**    **RELEVANT FACTS**

    As alleged in the Complaint, Plaintiffs "specialize in art and apparel featuring designs and motifs inspired by the culture, people, and life of the Northern Mariana Islands." Compl. ¶ 16. Plaintiffs have sold various goods, including blouses, short-sleeved and long-sleeved t-shirts, sweatshirts, t-shirts, baseball caps, and tank tops, since "at least as early as June 7, 2007" through physical locations and online sales. Id. ¶¶ 16, 22.

    "[T]he word 'MAGAS' features prominently in both Plaintiffs' Goods and Plaintiffs' branding." Id. ¶ 17. The word "MAGAS" is a Chamorro word, meaning chief, boss, master, and manager. Id. ¶ 18. Plaintiffs own United States Trademark Registration No. 3566485 for the stylized trademark of "MAGAS STRESSFREE C.N.M.I. COMPANY" ("Asserted Trademark") for "International Class 025 for goods in the nature of blouses, short- and long-sleeved t-shirts, sweatshirts, t-shirts, baseball caps, and tank tops." Id. ¶ 19. Plaintiffs have not permitted any third-

party to use the Asserted Trademark. Id. ¶ 23. In addition, on October 16, 2024, Plaintiffs filed U.S. Trademark Application Serial No. 98805022 with the United States Patent and Trademark Office ("Pending Trademark") for "the word mark 'MAGAS' in International Class 025 for tank tops, baseball caps, sweatshirts, blouses, shirts and short-sleeved shirts." Id. ¶ 20.

Defendants, likewise, sell apparel prominently featuring the word "MAGAS" through Defendants' website. Id. ¶ 24. Defendants' copyright for their website is listed as 2024, and defendant Magas Originals LLC filed its Articles of Organization on June 8, 2020. Id. ¶¶ 24-25. "Plaintiffs assert that the goods and services offered by Defendants are highly related to the ones offered by Plaintiffs and listed in Plaintiffs' [Asserted Trademark and Pending Trademark]." Id. ¶ 27.

While unclear when, Plaintiffs sent Defendants a cease-and-desist letter informing Defendants of the alleged illegal use of Plaintiffs' Asserted Trademark and Pending Trademark prior to commencing the instant litigation. Id. ¶ 29. "Defendants acknowledged receiving the letter." Id. However, Defendants have continued to sell the infringing apparel. Id.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a party who has failed to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny an application for default judgment is discretionary. Allstate Life Ins. Co. v. Markowitz, 590 F. Supp. 3d 1210, 1215 (C.D. Cal. 2022) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980)).

In determining whether to enter default judgment against a party, a court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default against a defendant, the court takes "'the well-pleaded factual allegations' in the complaint 'as true.'" DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (quoting Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992)). However, "a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps, 980 F.2d at 1267 (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)). In addition, allegations as to the amount of damages must be proven. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Finally, pursuant to Local Rule 55-1, an application for default judgment must be accompanied by a declaration setting forth: when, and against what party, default was entered; the pleading to which default was entered; whether the defaulting party is an infant or incompetent person; that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and that notice has been served on the defaulting party, if required. L.R. 55-1. The party applying for default

judgment must also provide the defaulting party with notice of the application if the defaulting party has appeared in the action or the applicant seeks unliquidated damages. Fed. R. Civ. P. 55(b)(2); L.R. 55-2.

## IV.
## DISCUSSION

### A.    THE MOTION SATISFIES THE APPLICABLE PROCEDURAL REQUIREMENTS

As an initial matter, the instant Motion satisfies the procedural requirements set forth in the Federal Rules of Civil Procedure and the Court's Local Civil Rules. Plaintiffs submitted a declaration that complies with Local Rule 55-1. See Cowan Decl. Specifically, the declaration states (1) default was entered against defendant Magas Originals LLC on March 26, 2025, (2) default was entered against defendant Duenas on June 3, 2025, (3) default was entered for failing to respond to Plaintiffs' Complaint, (4) Defendants are not infants or incompetent persons, and (5) Defendants are not officers or agents of any state or in the military service under the Servicemembers Civil Relief Act. Id. ¶¶ 2-11. Plaintiffs provided Defendants with a copy of the Motion via email on June 16, 2025. Id. ¶ 11.

### B.    THE EITEL FACTORS WEIGH IN FAVOR OF GRANTING DEFAULT JUDGMENT AGAINST DEFENDANTS

In addition, as discussed below, the Eitel factors weigh in favor of granting default judgment against Defendants.

#### 1.    Possibility of Prejudice to Plaintiffs

The first Eitel factor is "whether the plaintiff will suffer prejudice if default judgment is not entered." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, in light of Defendants' failure to appear, Plaintiffs "will likely be without other recourse for recovery." See id.; see also Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (finding prejudice to plaintiff favored entering default judgment because, "[i]f the Court does not enter a default judgment, it will allow [the defendant] to avoid liability by not responding to [the plaintiff's] claims").

Accordingly, the Court finds the first Eitel factor weighs in favor of entering default judgment.

#### 2.    Merits of Plaintiffs' Claims and Sufficiency of the Complaint

The second and third Eitel factors are "the merits of [the plaintiff's] substantive claim" and "the sufficiency of the [claim]." PepsiCo, Inc., 238 F. Supp. 2d at 1175. These factors, which "are often analyzed together," Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010), require a plaintiff to "state a claim on which the [plaintiff] may recover," PepsiCo, Inc., 238 F. Supp. 2d at 1175. A claim "satisfies this test when the claims 'cross the line from conceivable to plausible.'" Indian Hills Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 886 (S.D. Cal. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)). In performing this analysis, courts take "the well-

pleaded factual allegations in the [claim] as true." DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted).

Here, as discussed below, the allegations in the Complaint are sufficient to state a claim for each asserted cause of action. Compl. at 7-13.

### a. Causes of Action One, Two, Three, and Five: Trademark Infringement, Unfair Competition, and False Designation under the Lanham Act and Common Law Trademark Infringement

Claims for trademark infringement, unfair competition, and false designation under the Lanham Act and for common law trademark infringement all require a plaintiff to allege: (1) "it has a protectible ownership interest in the mark," and (2) "defendant's use of the mark is likely to cause consumer confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)) (applying the test to trademark infringement under the Lanham Act); Century 21 Real Est. Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The ultimate test for unfair competition is exactly the same as for trademark infringement[.]") (internal quotation marks omitted); Credit One Corp. v. Credit One Fin., Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009) (applying the same test for false designation claims under the Lanham Act); Sebastian Brown Prods., LLC v. Muzooka, Inc., 143 F. Supp. 3d 1026, 1038-39 (N.D. Cal. 2015) (applying the same test to common law trademark infringement claims). With respect to the first element, the registration of a mark is "prima facie evidence . . . of the registrant's ownership of the mark." Sebastian Brown Prods., LLC, 143 F. Supp. 3d at 1039 (quoting 15 U.S.C. § 1115(a)). Indeed, trademark actions under the Lanham Act must be based on registered trademarks. Id. at 1040 (finding plaintiff could not bring a claim pursuant to 15 U.S.C. § 1114 where the "Pending Mark has not been registered"). With respect to the second element, "[f]actors relevant to determining likelihood of confusion include: the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of expansion of the product lines." ACI Int'l Inc. v. Adidas-Salomon AG, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

Here, Plaintiffs sufficiently state a claim for Causes of Action One, Two, Three, and Five.[1] First, Plaintiffs allege ownership of the Asserted Trademark. Compl. ¶ 19. Registration of a mark is "prima facie evidence . . . of the registrant's ownership of the mark." Sebastian Brown Prods., LLC, 143 F. Supp. 3d at 1039 (quoting 15 U.S.C. § 1115(a)). Hence, Plaintiffs satisfy the first element. Second, Defendants "sell apparel that bears a mark prominently featuring the word 'MAGAS'." Compl. ¶ 24. The domain name for Defendants' website prominently displays the word "MAGAS" as well. Id. ¶ 27. Moreover, Plaintiffs have sold goods using the Asserted Trademark for nearly two decades. Id. ¶ 16. While Defendants' use of the marks is not identical, they are sufficiently similar to create incorrect impressions of the source of the products, which are all different types of apparel available for sale online. Id., Exs. A-C. Moreover, Defendants were aware of the alleged

---

[1] To the extent Plaintiffs' claims are based on the Pending Trademark, Plaintiffs fail to state a claim. See, e.g., Sanchez v. Ghost Mgmt. Grp., LLC, No. SACV-19-00442-AG-KESx, 2019 WL 4385763, at *2 (C.D. Cal. May 6, 2019) (noting claims under 15 U.S.C. § 1114 "require that the trademark at issue has been registered and can't be based on pending applications").

infringement because Plaintiffs sent a cease-and-desist letter prior to commencing this lawsuit. Id. ¶ 29. Hence, because Defendants' mark is likely to cause confusion, the Court finds Plaintiffs satisfy the second element.

Thus, for Causes of Action One, Two, Three, and Five, Plaintiffs sufficiently allege trademark infringement under the Lanham Act, 15 U.S.C. § 1114, unfair competition under the Lanham Act, 15 U.S.C. 1125(a)(1)(A), false designation under the Lanham Act, 15 U.S.C. § 1125(a), and common law trademark infringement.

### b.     Cause of Action Four: Unfair Competition under the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Because the UCL's language is written in the disjunctive, "[e]ach prong of the UCL is a separate and distinct theory of liability[.]" Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009); Estakhrian v. Obenstine, 233 F. Supp. 3d 824, 843 (C.D. Cal. 2017). A claim under the UCL may be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotation marks and citation omitted). To state a claim, a Plaintiff must allege a violation of "law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994).

Here, as stated above, Plaintiffs sufficiently allege claims pursuant to the Lanham Act. Thus, for Cause of Action Four, Plaintiffs sufficiently state a claim pursuant to the UCL. Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC, 165 F. Supp. 3d 937, 953 (S.D. Cal. 2016) (finding plaintiff sufficiently stated a claim pursuant to the unlawful prong of the UCL by stating a claim pursuant to the Lanham Act).

* * *

Accordingly, the Court finds the second and third Eitel factors weigh in favor of entering default judgment.

### 3.     Sum of Money at Stake

The fourth Eitel factor is "the amount of money at stake in relation to the seriousness of [the defendant's] conduct." PepsiCo. Inc., 238 F. Supp. 2d at 1176-77. The court must "assess whether the recovery sought is proportional to the harm caused by" the defendant. Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, Plaintiffs seek damages, injunctive relief, and attorneys' fees and costs. Mot. at 11. Mot. at 2. As discussed below in Section IV.C., the Court grants in part and denies in part Plaintiffs' requested relief. The Court finds the amount of money at stake is proportional and tailored to the harm caused by Defendants.

Accordingly, the Court finds the fourth Eitel factor weighs in favor of entering default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth Eitel factor is "the possibility of dispute as to any material facts in the case." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, because default has been entered against Defendants, see dkts. 17, 22, the Court takes "the well-pleaded factual allegations in the [Complaint] as true[,]" see DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted), except insofar as they pertain to the amount of Plaintiffs' damages, see TeleVideo Sys., Inc., 826 F.2d at 917-18.  Hence, no genuine dispute of material facts would preclude entry of default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177 (concluding no genuine dispute of material facts would preclude entry of default judgment because, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

Accordingly, the Court finds the fifth Eitel factor weighs in favor of entering default judgment.

### 5. Excusable Neglect

The sixth Eitel factor is "the possibility that the default resulted from excusable neglect." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, defendant Magas Originals LLC was served with the summons and Complaint on February 12, 2025, and defendant Duenas was served with the summons and Complaint on April 25, 2025.  Dkts. 13, 18.  Plaintiffs also provided notice to Defendants with the instant Motion on June 16, 2025 via email.  Cowan Decl., ¶ 11.  Nevertheless, Defendants failed to answer, file an opposition to the instant Motion, or otherwise appear in this action.  The Court, therefore, finds it unlikely that Defendants' default resulted from excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding default could not "be attributed to excusable neglect" where defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

Accordingly, the Court finds the sixth Eitel factor weighs in favor of entering default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

The seventh Eitel factor is the strong policy favoring decisions on the merits.  See Eitel, 782 F.2d at 1472.  While the policy favoring decisions on the merits "always weighs against default judgment," Amini Innovation Corp., 768 F. Supp. 2d at 1056, this factor, "standing alone, is not dispositive."  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Defendants' apparent unwillingness to participate in this aspect of the litigation "makes a decision on the merits impractical, if not impossible."  See id.  Thus, the policy favoring decisions on the merits does not preclude entering default judgment.  See id.; see also Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (finding default judgment appropriate when "a decision on the merits is impossible").

\* \* \*

Accordingly, the Eitel factors strongly weigh in favor of default judgment on Plaintiffs' claims. Therefore, the Court finds default judgment against Defendants is appropriate.

## C.     PLAINTIFFS' REQUESTED RELIEF

In seeking default judgment, the moving party "has the burden of proving damages through testimony or written affidavit." Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Default judgment may be entered without a hearing if the amount claimed is "capable of mathematical calculation." Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Here, Plaintiffs seek monetary damages in the amount of $53,762.15 based upon Defendants' sales, a permanent injunction, attorneys' fees in the amount of $11,752.00, and costs in the amount of $998.05. Mot. 11-17. As discussed below, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' requested relief.

### 1.     Monetary Damages

Under the Lanham Act, a plaintiff is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "Monetary recovery for trademark infringement and unfair competition is measured variously by defendant's profits, plaintiff's actual business damages and losses caused by the wrong, or plaintiff's loss of profits caused by the wrong." Blumenthal Distrib., Inc. v. Comoch Inc., 652 F. Supp. 3d 1117, 1132 (C.D. Cal. 2023) (citation modified). For profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Here, Plaintiffs' counsel executed a subpoena on Shopify, Defendants' online retailer, to determine Defendants' sales. Cowan Decl, ¶ 12, Ex. A. Defendants were notified of Plaintiffs' subpoena. Id. According to Shopify's records, Defendants' total sales amounted to $53,762.15, which is the amount Plaintiffs seek. Given Plaintiffs have proven Defendants' sales and Defendants have not provided any objections or deductions, the Court finds Plaintiffs' request for monetary damages in the amount of $53,762.15 to be reasonable and just.

Accordingly, Plaintiffs' request for monetary damages in the amount of $53,762.15 is **GRANTED**.

### 2.     Permanent Injunctive Relief

The Lanham Act authorizes courts to issue permanent injunctions "to prevent the violation of any right of the registrant of a mark registered" with the Patent and Trademark Office. 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

Here, the Court finds a permanent injunction is warranted. First, Plaintiffs have sufficiently alleged they suffered irreparable harm. Under the Lanham Act, a plaintiff whose trademark is infringed is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Second, monetary damages are inadequate to compensate for this harm, particularly given the reputational damage and Defendants' failure to appear in the case, which offers no assurance Defendants will cease the misconduct. Additionally, despite Plaintiffs' cease and desist letter and the instant lawsuit, Defendants have continued their sale of the infringing product. Third, the balance of hardships favors Plaintiffs because the injunction would merely prohibit Defendants from continuing to infringe upon the Asserted Trademark. Lastly, the public interest strongly supports injunctive relief, as "the public receives a benefit when the legitimate rights of copyright holders are vindicated." Netdragon Websoft, Inc. v. Toft, No. CV-11-1037-GHK-PLAx, 2012 WL 13008123, at *5 (C.D. Cal. Apr. 24, 2012) (citation omitted); Alpargatas USA, Inc. v. Flopstore LLC, No. CV 21-6063-GW-PVCx, 2022 WL 1843134, at *6 (C.D. Cal. Mar. 25, 2022), adopted, No. CV 21-6063-GW-PVCx, 2022 WL 2150656 (C.D. Cal. Mar. 28, 2022) (noting the "strong public policy favoring the protection of trademark rights"). Thus, Plaintiffs are entitled to injunctive relief. See id.

Accordingly, Plaintiffs' request for a permanent injunction is **GRANTED**.

### 3. Attorneys' Fees

For trademark infringement cases, the Lanham Act provides, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). However, for *willful* trademark infringement cases, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee[.]" 15 U.S.C. § 1117(b).

Local Rule 55-3 sets forth the schedule for reasonable attorneys' fees. "If a party seeks a fee 'in excess of' the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a 'reasonable' fee." Vogel v. Harbor Plaza Ctr., LLC, 893 F.3d 1152, 1159 (9th Cir. 2018). Counsel files a request to have fee fixed by "claim[ing] a fee in excess of the scheduled amount[.]" Id.

"The court determines whether the fee is reasonable pursuant to the two-step lodestar method[.]" Blumenthal Distrib., Inc. v. Comoch Inc., 652 F. Supp. 3d 1117, 1133 (C.D. Cal. 2023). First, under the lodestar method, a court considers the work completed and multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate." Gracie v. Gracie, 217 F.3d 1060, 1070 (9th Cir. 2000) (internal citations omitted). The moving party has the burden to produce evidence that the rates and hours worked are reasonable. See Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 623 (9th Cir. 1993). To meet this burden, the moving party must submit "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008). The moving party must also "document[] the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary'." Welch v. Metro Life Ins. Co., 480 F.3d 942, 945 (9th Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433). The court may exclude them either by (1) "conduct[ing] an hour-by-hour analysis of

the fee request and exclude those hours for which it would be unreasonable to compensate the prevailing party"; or (2) "when faced with a massive fee application[,] the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application," Gonzalez v. City of Maywood, 729 F.3d 1196, 1203 (9th Cir. 2013) (citation modified). Second, under the lodestar method, "the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." Blumenthal Distrib., Inc. v., 652 F. Supp. 3d at 1133 (quoting Welch v. Metro. Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007)). This adjustment takes place only "in rare and exceptional cases." Id.

As a preliminary matter, because Plaintiffs sufficiently allege willful trademark infringement, the Court finds Plaintiffs are entitled to attorneys' fees. As stated earlier, Defendants continued their sale of infringing products after receiving Plaintiffs' cease and desist letter and after receiving notice of the instant lawsuit. Compl. ¶ 29.

Plaintiffs' counsel seeks $11,752.00 in attorneys' fees based on 31.92 hours of work. Cowan Decl., ¶ 20. Specifically, Plaintiffs' counsel requests $1,595 for Nathan Camuti, who worked 2.9 hours on this matter at a billing rate of $550, and $10,157 for Robert Cowan, who worked 29.02 hours on this matter at a billing rate of $350. Id. ¶ 17, Ex. B.

Plaintiffs' counsel fails to provide any detail regarding their work. Instead, Plaintiffs' counsel provides a single lump sum total for each attorney without even providing information on the work completed. Id., Ex. B. Counsel's declaration merely states the attorneys "worked on all aspects of this litigation, including: litigation strategy and analysis, pre-filing investigation, preparation of the complaint, analysis of service and pursuing mail service, monitoring the status of service, and seeking orders as necessary to seek default and default judgment." Id. ¶ 17. While counsel indicates "records of the time billed to Plaintiffs were kept in the firm's customary manner, through its electronic timekeeping and accounting systems[,]" id. ¶ 14, counsel fails to provide the hourly records or otherwise "submit evidence in support of those hours worked," Gates, 987 F.2d at 1397. Because Plaintiffs fail to submit satisfactory evidence in addition to the attorney's own declaration, Plaintiffs' request for attorneys' fees is **DENIED without prejudice**. Citizens Bus. Bank v. Vessel Bellezza, No. 8:18-CV-02163-JLS-KESx, 2020 WL 7064247, at *7 (C.D. Cal. Oct. 27, 2020) ("[C]ourts have held that a Plaintiff is not entitled to attorneys' fees on default judgment when it states in conclusory fashion the amount of attorneys' fees it has purportedly incurred, but adduces no evidence supporting the requested amount.") (citation modified).

    4.    Costs

Local Rule 54-1 states, "[t]he 'prevailing party' entitled to costs under Federal Rule of Civil Procedure 54(d) is the party in whose favor judgment is entered, unless otherwise determined by the Court." Plaintiffs seek recovery of $998.05. Mot. at 17. The requested costs are associated with case filings, service of process fees, and trademark office fees. Id. In support of these requests, Plaintiffs provide a summary of Camuti Law Group APC's billing records. Cowan Decl., Ex. C. However, Plaintiffs fail to provide any further documentation verifying they incurred these costs in litigating this action. See Wells Fargo Bank, N.A. v. Ninesquare Cap. Partners, LLC, No. 2:22 CV-01277-FWS-ASx, 2023 WL 11195793, at *6 (C.D. Cal. Dec. 7, 2023) (declining to award Plaintiff's requests for costs for failure to provide documentation substantiating the costs). Hence, the Court grants the request for costs only for the court filing fees totaling $405.00.

///

# V.
# CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Default Judgment is **GRANTED** and the requested relief is **GRANTED IN PART AND DENIED IN PART**. The Court, therefore, **ORDERS** judgment to be entered (1) in favor of Plaintiffs against Defendants in the amount of $54,167.15, inclusive of $53,762.15 in monetary damages and $405.00 in costs. Additionally, Defendants are enjoined from further infringement on the Asserted Trademark.

If Plaintiffs continue to seek an order for attorneys' fees, Plaintiffs shall file an amended request, with proper documentation, no later than 7 days from the date of this Order. Plaintiffs are advised failure to do so will result in judgment being entered accordingly.

**IT IS SO ORDERED**.